IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| **VERNA DEAN PATES,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | Civil Action Number |
| | ) | |
| **REGIONS BANK,** | ) | 98-C-1978-S |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION ON PLAINTIFF'S MOTION
FOR A PRELIMINARY INJUNCTION**

Plaintiff Verna Dean Pates has moved for a Temporary Restraining Order, seeking to enjoin Defendant Regions Bank from retaliating against her because she is prosecuting this case. Because the relief she seeks is continuing in nature, and because Regions has been given ample notice and an opportunity to respond to the motion, the Court treats the motion as one for a preliminary injunction. Based on the findings which follow, the Court concludes that she is entitled to the relief she seeks.

A. Background

The Court adopts and incorporates herein by reference the findings embodied in its June 5, 2001, Memorandum Opinion on Defendant's Motion to Dismiss For Failure to Timely Perfect Service.

In her *pro se* complaint, Plaintiff, an African-American, alleges racially motivated demotions, lack of training, and differential treatment. In her amended complaint, filed by counsel, she additionally complains of denials of promotions and retaliation.

Discovery has been completed, and, based on the Scheduling Order, the case should be tried in mid-December of this year.

### B. Legal Standards

Section 704(a) of Title VII makes it unlawful for an employer to discriminate against an employee "because he has opposed any practice made an unlawful employment practice by this [title], or because he has made a charge, testified, assisted, or participated in any matter in an investigation, proceeding, or hearing under this title." 42 U.S.C. § 2000e-3(a). A *prima facie* retaliation case is established by showing that (1) the employee engaged in protected activity; (2) the employer was aware of that activity; (3) the employer took an adverse employment action against the employee; and a casual connection between the employee's protected activity and the employer's adverse action existed. Maniccia v. Brown, 171 F.3d 1364, 1369 (11th Cir. 1999). After Plaintiff makes such showing, the burden shifts to Defendant to rebut the presumption of retaliation by producing legitimate reasons for the adverse employment action. Sullivan v. National R.R. Passenger Corp., 170 F.3d 1056, 1059 (11thi Cir. 1991).

2

A preliminary injunction is properly issued where: (1) a substantial likelihood exists that plaintiff will prevail on the merits, (2) a substantial threat exists that plaintiff will suffer irreparable injury if the injunction is not granted, (3) the threatened injury to plaintiff outweighs the threatened harm the injunction may do to defendant, and (4) granting the preliminary injunction will not disserve the public interest. <u>DiGiorgio v. Causey</u>, 488 F. 2d 527 (5th Cir. 1973); <u>Blackshear Residents Organization v. Romney</u>, 472 F. 2d 1197 (5th Cir. 1973).

### C. The Denial of a Replacement Computer

Plaintiff has been classified as a Utility Clerk II or Clerical Specialist since 1997. In that position she "floats" or transfers among various temporary job assignments in the Operations Control Department. There are five other floaters in the Operations Department. While the vast majority of the work in the Operations Department is done via computers, floater Rebecca Roberts is principally assigned to non-clerical duties, such as delivering the mail and supplies. Predictably, with the exception of Rebecca Roberts, all of the floaters in the Operations Department are provided with a computer for use in performing their duties.

Within the Operations Department is the Operations Control Compliance Division. All of the permanent employees in the Operations Control Compliance Division are given computers. When assigned to the Compliance Division, Plaintiff performs precisely the

same kind of work in the Division as do the permanent employees. Plaintiff has been assigned to the Compliance Division for an intermittent period of time over the last two years. The supervisor of the Compliance Division is Kim Wood. In performing the functions to which she is assigned by Ms. Wood, Plaintiff is required to use a computer between 85-95% of the time (6 ½ -7 ½ hours out of an 8-hour workday).

Until September 24, 2001, Plaintiff had enjoyed the use of a computer at her desk during all material times. On the morning of Monday, September 24, 2001, however, Plaintiff arrived at work and tried to turn on her computer, but was unable to do so. Plaintiff alerted Kim Wood, who told Plaintiff to call the PC support personnel. PC support arrived shortly and examined the computer. They talked to Kim Wood outside the hearing of Plaintiff. Thereafter, Kim Wood told Plaintiff: "Your computer is dead. You won't be getting another one." Astonished, Plaintiff replied: "At least I still have a phone." Kim Wood responded: "You may not have it for long." She then gave Plaintiff a notepad in lieu of a computer.

Kim Wood testified that Plaintiff's chagrin, anger, and depression were obvious after being told that her computer would not be replaced. During her testimony, Kim Wood justified the response about the telephone by claiming that she wanted to comfort Plaintiff and put her at ease. Kim Wood's testimony in this, and other respects that are not corroborated by Plaintiff's testimony, is simply not credible.

At the time that Kim Wood made the decision not to replace Plaintiff's computer,

4

Wood could readily have made another computer available to Plaintiff. Instead, since September 24, Plaintiff has been forced to use the computers on the desks of other clericals in the Division and that of Kim Wood, as the computers were made available to Plaintiff.

Plaintiff's motion for injunctive relief was filed with this Court at 3:10 p.m. on September 27, 2001. Roughly two hours later, Janet Eubanks, the Manager of the Operations Control Department, generated a request to purchase a new computer for one of the permanent employees in the Compliance Division. When the new computer arrived on October 4, it was given to a permanent employee. The permanent employee's old computer was placed on Plaintiff's desk. When Plaintiff requested that Kim Wood activate the computer, Kim Wood replied that, while it would take "only a minute" to activate the computer, Wood did not have time to do so. However, as of October 11 - the date of the hearing on the motion - the replacement computer had not been activated at Plaintiff's desk. Plaintiff therefore continues to use the computers assigned to Kim Wood and the permanent employees in the Compliance Division. At the hearing, Defendant offered no explanation of its failure to activate the computer which has now been placed on Plaintiff's desk.

Given these facts, the Court finds that Plaintiff has established a *prima facie* case for retaliation and Defendant has failed to proffer any legitimate non-discriminatory reasons for its failure to provide Plaintiff with a working computer.

5

The Court also finds that the prerequisites for issuance of a preliminary injunction have been met with regard to Defendant's failure to provide Plaintiff with a replacement computer. At all material times, Eubanks, Wood, and Defendant's other decisionmakers were aware of the pendency of this lawsuit, and the existence of this case was the motivation for their failure to provide Plaintiff with a replacement computer. Failing to provide Plaintiff with all materials necessary to perform her work imposes an irreparable harm upon her. Further, provision of appropriate materials to Plaintiff will not injure Defendant in any way.

### D. The Denial of a Permanent Position

Within the last year and a half, Plaintiff was assigned by Jim Wright, the Assistant Division Manager, to work as a floater reconciler in the Deposit Operations Division. She requested that her temporary position be converted to a permanent one. Immediately after her lawyers made this request, Plaintiff was removed from the position. The position was subsequently filled on a permanent basis by a new white employee, Jennie Wooten.

Within the last few months, Plaintiff was assigned to work as a floater clerk on a special project dealing with the reconciliation of official checks. Banks Burrell was the Lead Clerk on the project. The Lead Clerk is the most experienced person on the project, and it is that person's duty, *inter alia,* to provide guidance, instruction, and training to the other clerks assigned to the project. The Lead Clerk is to assign the others clerks to the

6

various positions in the reconciling project.

Plaintiff approached Burrell in his capacity as Lead Clerk and requested additional training in various aspects of the special project. Burrell's response was that he had been instructed not to afford her additional training because of the pendency of this case. The Court finds that this instruction came from one or more of Burrell's supervisors and/or managers.

When Burrell made the statement to Plaintiff, he was the servant/employee of Defendant specifically responsible for responding to Plaintiff's request for additional training on the special project, and the statement was made during the scope of his responsibilities as the Lead Clerk. Fed. R. Evid. 801(d)(2)(D)[1]. Not without significance, Defendant offered no evidence to controvert Burrell's statement. Therefore, Defendant has failed to provide evidence that it had a legitimate non-discriminatory reason for its conduct.

The Court concludes preliminarily that Plaintiff has been denied a permanent position solely because she is prosecuting this lawsuit. Such a denial threatens Plaintiff with an irreparable harm that far outweighs any potential inconveniences to Defendant.

---

[1] "Under the Federal Rules, 'it is not necessary to show that an employee or agent declarant possesses "speaking authority," tested by the usual standards of agency law, before a statement can be admitted against the principal.' Instead, it is necessary that the content of the declarant's statement concern a matter within the scope of his employment or agency." City of Tuscaloosa v. Harcros Chemicals, Inc., 158 F.3d 548, 558 (11th Cir. 1999) (citations omitted).

7

The prerequisites for issuance of a preliminary injunction have thus been met.

By separate order, the Court will grant a Preliminary Injunction.

Done this 15th day of October, 2001.

                                                  Chief United States District Judge
                                                        U.W. Clemon